Jenner, J.
The relator, G. W. Helter, filed his petition in the circuit court, averring, among other things, that on the 22nd day of May, 1893, the clerk of the township of Goshen, in Tuscarawas county, issued to him an order for services rendered as teaeher in sub-district number ten in said township between the first day of April, 1892, to the 29th day of April in the same year, in all twenty days; that the order was issued in pursuance of a peremptory writ of mandamus, allowed by the court of common pleas in a case pending wherein The State of Ohio on relation of G. W. Helter, was plaintiff, and the Clerk of said township was defendant; that the said relator, on the 23nd day of May, 1893, presented said order to L. P. Myers, who was then the treasurer of said township, for payment, but payment was refused ; that said relator again, on the 7th day of May, 1894, presented said order to the defendant for payment, and payment was again refused, notwithstanding that ample funds were in the hands of said treasurer at the date of each presentment, and still is, with which to pay said order, and notwithstanding said court of common pleas had adjudicated and determined in said action the amount of said order, and that ample funds were in the hands of said treasurer with which to pay the same. The plaintiff prays that a writ of mandamus may issue against said John A. Zeeb, the present treasurer of said township, commanding him to pay said order.
*15 On motion of said relator, an alternative writ of mandamus was issued requiring the defendant to show cause for refusing payment of said order.
The defendant has filed his answer, and the defense is substantially this : that when said order was presented for payment, that he had not funds of such township in his hands or under his control applicable to the payment of said order, and he denies that the court determined any question arising in this action.
2nd. — He avers that at the time said order was presented to the treasurer, the fund applicable to the payment o± teachers was overdrawn, and entirely exhausted.
3rd. — He avers that the board of education of said township of Goshen apportioned to said district number ten for continuance of its schools during the year for which relator contracted to teach said school, $785.00 of the contingent fund, and the relator and directors of said district well knew at the time of making the contract to teach said school, that the funds legally apportioned and applicable to the use of said district were not sufficient for the continuance of said schools for seven months at the wages per month agreed upon between said relator as teacher and the directors of said sub-district, and said contract for the month of April, 1892, was in excess of the amount legally apportioned for the use of said district, and vas void.
The relator, in reply, admits that the contingent fund apportioned to the said district number ten was entirely exhausted, as alleged in said defendant’s answer, but he denies that there was no funds in the treasury of said township applicable to the payment of relator’s order at any time, and is not now, as the same is alleged in said defendant’s answer. He avers that there is now ir the hands of the said township treasurer a sufficient ana ample amount of the state common school fund applicable to the payment of said relator’s order to pay the same in full. The relator denies that he knew or had any *16 knowledge at the time of making his said contract to teach said school that the funds applicable to the use of said district were not sufficient for the continuance of said school for the time mentioned in said contract at the wages per month therein specified, or that he had any such knowledge at any time during said term of service.
The evidence shows that in April, 1891, Geo. W. Helter entered into a contract with the directors of said sub-district number ten to teach their school for a period of seven months at the agreed price of $50.00 per month. In the building in which he taught there were four schools; he taught one, and was the superintendent, by the terms of his contract of the four; there were about fifty pupils to each school, and a larger enumeration of youth of school age in said sub-district. In the month of February, 1892, while he was engaged in the performance of his contract, he received notice from the board of education of the township that there were not sufficient funds in the treasury to continue the school at the salary he was to receive for the full term of seven months, and not more than sufficient for the term of six months. That he performed the terms of his contract, taught and superintended said school for the full term agreed upon; that thereupon an order wasissued to him for six months service; that the clerk of the township refused to include in said order the last month, which would have been fifty dollars additional. Thereafter he made application to the court of common pleas for a writ of mandamus to compel the clerk to issue an order for the last month’s service performed by him. This matter was heard in the common pleas court, and a peremptory writ of mandamus awarded to the relator. In pursuance of said mandate, on May 22, 1893, the clerk of said township issued an order to said Helter. It is claimed on this hearing that the order made by the court of common pleas settles the questions arising in the case at bar, but we decline to take that view of the case. The township treasurer, defendant herein, was not a party to said proceeding, and while it may fairly be argued that the court *17 below would not have granted a peremptory writ of mandamus requiring the clerk to issue said order, unless he was satisfied there were funds in the township treasury applicable to the payment of this claim, yet we think that the treasurer now being brought in for the first time has the right to make the defense that there are no such funds in the treasury applicable to the payment of this order. We think that the defense set up in the answer, if sustained by the evidence, would defeat the claim of the relator.
It appears from the evidence that for the school year commencing September 1st, 1891, and ending September 1st, 1892, the treasurer of Goshen township received from all sources, school funds to the amount of $7,811.69; it further appears that he received state common school funds to the amount of $1,255.50, and from a tract of land known as the Moravian tract, the sum of $90,00; and from the Military lands $56.80, so that said total of $7,811,69 received by the treasurer, less $1,402.30, was the contingent fund provided for the board of education of said township. A settlement was made September 19th, 1892, between the treasurer of said township and the auditor, at which time it was found there was $3,389.32 of a balance of school funds in the hands of said township treasurer. It is contended by the relator that this clearly shows there were binds in the hands of the township treasurer subject to the payment of said order. It is contended on the other side that, although there was this balance in the treasury, it was not subject to the payment of this order. The difficulty that arises in determining this question is occasioned by the manner in which the business pertaining to the state common school fund has been managed between the county auditor, the township treasurer, and the board of education. The testimony on behalf of defendant discloses the fact that for many years the auditor has failed to apportion this fund as the law requires ; the township treasurer has received the fund in bulk without knowing what proportion of it each sub-district was entitled to, and the board of education at no time attempted *18 to apportion it between the sub-districts as the law requires. It was not the legal duty of the board of education of the township to make apportionment, and the county , auditor says it was impossible for him to do it. The reason he assigns for his neglect is the precedent established by former auditors, and the impossibility, because there was $146.80 arising from the Military and the Moravian tracts which he did not know how to distribute between the sub-districts.
The educational section of the constitution, art. 6, section 1, provides, that the principal of all funds arising from the sale or other disposition of lands or other property granted or entrusted to this state for educational and religious purposes shall forever be preserved inviolate and undiminished ; and the income arising therefrom shall be faithfully applied to the specific objects of the original grants or appropriations.
Section 2 provides : “The general assembly shall make such provisions, by taxation or otherwise) as with the income arising from the school trust fund, will secure a thorough and efficient system of common schools throughout the state.” Our public schools are the pride, not only of our state, but of our country, and the legislature in attempting to secure an efficient system of common schools throughout the state have sought to secure to every child of school age an equal opportunity for education, whether they be children of the poor or of the rich, whether they reside in a township in which millions are represented on the tax duplicate, or in one without wealth.
As far as the state common school fund can be used, this idea has been kept prominently in view. Let us examine a few sections of the Revised Statutes cited by counsel. Section 3956 provides that the auditor of state shall apportion the state common school fund to the several counties of the state semi-annually, upon the basis of the enumeration of youth therein, as shown by the latest abstract of enumeration transmitted to him by the state commissioner of common schools.
Section 3958 provides, that each board of education shall *19 annually determine, by estimate, as nearly as practicable, “the entire amount of money necessary to be levied as a contingent fund for the continuance of the school or schools of the district, after the state funds are exhausted, to purchase sites for school houses and build additions thereto,-and for other school expenses.” It will be noted that this is called a contingent fund, as distinguished from the state common school fund.
We now refer to section 3964, for the duty of the county auditor, with reference to the state common school fund. It is provided that he shall apportion the school fund for his county, and the state common school fund he shall apportion in proportion to the enumeration of youths to districts, sub-districts, joint sub-districts, and fractions of districts, and joint sub-districts within the county. “The contingent fund collected from the several districts shall be paid to the districts to which they belong, and all other money in the county treasury for the support of common schools and not otherwise appropriated by law, shall be apportioned annually in the same manner as the state common school fund.”
We will examine, for a moment, the provisions of section 3970. Among other things, it is provided in said section, that the auditor shall inspect all accounts of interest accruing, on account of section 16, or other school lands, whether the same is payable by the state or by the debtors.
Section 3965 provides, that the auditor shall immediately after such apportionment is made, enter the same in a book to be kept for that purpose, and furnish a certified copy of the apportionment to each school treasurer and clerk in his county; and he shall give to each of such treasurers an order on the county treasurer for the amount of money payable to him; and take his receipt thei’efor.
It is provided in seetion 3967 that so much of the contingent fund as may be set apart by a township board for the continuance of schools after the state funds are exhausted, shall be so apportioned by the board that the schools in all the sub-districts of the township shall be continued the same *20 length of time each year. The board of education may exercise a discretion in the apportionment they make of this contingent fund, but they have no such discretion as to the state common school fund; each youth of the school age is entitled to an equal proportion of it.
Section 4018 provides that the director’s of sub-districts may employ teachers, fix their salaries, which salaries may be increased, but not diminished in amount by the township, and shall not exceed in the aggregate, in any year, for any sub-district, the amount of money to which the sub-district is entitled for the purpose of tuition for such year. How is it to be determined, the amount of money to which the sub-district is entitled for the purpose of tuition for each year? Upon the examination of fhe various sections here referred to, we are of the opinion that this amount is determined by the share of the state common school fund that each sub-district is entitled to, together with such amount as the township board of education may add thereto from the contingent fund.
Can it be claimed that the county auditor, and the township treasurer, and the board of education have any discretion as to this state common school fund ? It is carefully provided in section 4044 and 4055 as to the manner in which the accounts between the county auditor, township treasurer and the township clerk shall be entered. In the last named section it is provided that a separate account of each fund shall be kept, and each account shall be balanced at the close of the year, and the balance in the treasurer’s hands belonging to each Jund shall be shown. The auditor is required to furnish to the clerk and treasurer of each school district a suitable blank book in which to keep account of their separate funds.
As we have before stated, the county auditor, the township clerk, and the township- treasurer have disregarded the requirements of this statute, so that they are unable to state the amount of the state common school fund that any sub-district was entitled to; their accounts fail to show what amount has been paid out from any particular fund; the settlement of *21 1892 only shows the gross amount received from all sources, and the gross amount paid out, leaving a balance of all funds in the hands of the township treasurer on the 19th of September, 1892, of $3,389.32. It is stated by the president of the board of education of the township, that they were indebted in the sum of about four thousand dollars for school-houses erected in various sub-districts, but they are not entitled to use any of the state common school fund toward the erection of school-houses. The treasurer of Goshen township received for said year $1,255.50 of the state common school fund ; it does not appear by the books, nor by the testimony, that sub-district number fen received its proportion of said fund, and we must assume from the settlement made, and the evidence offered, that said sub-district received only its proportion of the contingent fund that the board of education deemed proper for that year, and that its share of this state common school fund still remains in the treasury, subject to be applied to the payment of the order of the relator, and a peremptory writ of mandamus will be awarded him.
J. A. Buchanon, for relator.
J. F. Willems, for respondent.